APPEL, Justice
(dissenting).
I agree with the majority opinion to the extent it rejects the contention that a juvenile court is categorically prohibited from ordering residential treatment as part of a consent decree. I respectfully dissent from the balance of the opinion and the result in this case.
*618 The sole issue before the court, according to the State’s brief, is whether “According to Governing Case Law, The Juvenile Court Acted Illegally When It Granted A Consent Decree, Then Proceeded to Place [J.W.R.] in Residential Treatment.” The sole issue presented under this heading is whether a juvenile may be placed in residential treatment pursuant to a consent decree. It is a categorical challenge to the authority of the juvenile court to impose residential treatment as a term or condition of a consent decree. The answer to this categorical question, as I explain below, is that the juvenile court has broad discretion under Iowa Code section 232.46 (2011) to impose residential treatment as a term or condition of a consent decree. Because this is the only issue raised on appeal, this case should be affirmed.
Though the sole issue as presented by the State is whether the juvenile court may place the child in residential treatment pursuant to a consent decree, the majority opinion begins by rewriting the State’s characterization of the issue to add new issues. According to the majority:
This case asks us to consider the juvenile court’s authority in a delinquency proceeding to enter a consent decree, over the State’s objection, placing a child in the legal custody of juvenile court services, with the department of human semces as payment agent, for purposes of placement in a residential facility.
(Emphasis added.) The majority thus adds two issues into the case that the State did not present either at the district court or on appeal. First, the majority attempts to expand the issues to include a question of custody. Second, it interjects the issue of payment for the residential services.
No one challenged the issue of temporary transfer of custody under the juvenile code in the juvenile court at any time. At the beginning of the case, the juvenile court, after the parents were given notice and an opportunity to be heard, temporarily transferred “custody” to juvenile court services and placed J.W.R. in shelter care pursuant to Iowa Code section 232.21. As correctly noted by the State in its statement of the issue, what is involved in this case is the placement of the child, not a temporary transfer of custody.
The State raised no objection to the temporary transfer of custody to juvenile court services when J.W.R. was placed in shelter care. Neither did the parents, despite their opportunity for a full hearing on the issue. See Iowa Code § 232.38. The consent decree and subsequent orders relating to residential treatment did not change this custody arrangement. Instead, it only transferred J.W.R. from his then-current placement, Four Oaks, to a residential facility where he could receive both shelter care and appropriate treatment.
The State did not claim custody could not remain with juvenile court services after the transfer to residential treatment. The State did not claim the custody arrangements were improper, and no rule 1.904(2) motion was ever filed claiming the juvenile court lacked statutory authority to continue custody with juvenile court services. See Meier v. Senecaut, 641 N.W.2d 532, 539 (Iowa 2002) (noting that a rule 1.904(2) (then-rule 179(b)) motion is “necessary to preserve error ‘when the district court fails to resolve an issue, claim, or other legal theory properly submitted for adjudication’ ” (citation omitted)). The sole objection raised by the State was that the juvenile court lacked the authority to require residential treatment as a term or condition of a consent decree.
*619 Nor is the issue of payment by DHS before the court. The issue was not raised with the juvenile court at any place or time. Nowhere in the appellate brief does the State challenge the payment mechanism. The most that can be said is that the State cited In re C.D.P., 315 N.W.2d 731 (Iowa 1982), an action brought by the department of social services challenging an order requiring it to fund residential treatment without a transfer of custody to the department.
Plainly, unlike this case, In re C.D.P. was a funding dispute. The department was a party in the case seeking to avoid payment. Id. at 733. The State relied upon In re C.D.P. here to support its argument that residential treatment may never be ordered under Iowa Code section 232.46, which is, of course, a completely different issue. Nowhere in its brief on appeal does the State claim on behalf of DHS that it has been improperly ordered to pay. Nowhere is there any suggestion that the State is seeking to protect the public purse. The majority opinion in effect seeks to vindicate what it sees as the interests of DHS in a proceeding when DHS is not before the court and none of the parties have raised the funding issue. The majority opinion takes J.W.R. to task for not raising arguments related to funding, when the issue was never raised in the case. But J.W.R. cannot be faulted for not jousting with ghosts.
The majority suggests that an interpretation of funding provisions is essential to determine the scope of the terms and conditions that a district court may impose pursuant to a consent decree under Iowa Code section 232.46. Even if the issue of state funding were properly before the court, with full briefing of the applicable statutes and argumentation, a decision that the State cannot be required to pay for residential services pursuant to a consent decree would not prevent a juvenile court from ordering residential treatment if payment could be obtained from another source.
The majority correctly notes that nothing in the record indicates that there may be payment from another source. But then, oddly, the majority uses that against J.W.R. In fact, the issue was not raised below because it was not joined in the juvenile court. The lack of juvenile court development of the issue cannot be charged against J.W.R. when the State did not raise the issue at the juvenile court level. Once again, the majority thus turns issue preservation on its head by attacking a party’s failure to respond to an issue that the opposing party failed to raise.
In short, I would rule solely on the issue presented and affirm the order of the juvenile court. I would defer to another day the other issues the litigants have not brought to us and which have not been fully briefed. For the reasons expressed below in some detail, I conclude a juvenile court may order residential treatment as a term or condition of a consent decree. Our precedents require us' to defer to another day the other issues that the litigants have not brought to us.
In any event, even under the majority opinion, the juvenile court on remand has some room to sculpt a consent decree. In its concluding paragraph, which I take is the holding of the case, the majority does not prohibit the juvenile court from making a residential placement pursuant to a consent decree. Admittedly, there is language in the majority opinion to the contrary, but this must be regarded as dicta in light of the explicit holding. The issue in this case may be moot, but under the majority opinion, if the juvenile court alters the temporary custody language and does not mandate that DHS pay for the services under Iowa Code chapter 232, the *620 juvenile court in other cases may be able to exercise discretion to craft a consent decree involving residential treatment in the best interest of the child.
I. Background Facts and Proceedings.
After the State filed a petition in March 2011 alleging that fifteen-year-old J.W.R. committed the delinquent acts of sexual abuse in the third degree and incest, J.W.R. was removed from the family home and detained at the Polk County Juvenile Detention Center. On June 3, the court entered an order placing the child in “the temporary custody of the ... Juvenile Court Services, with the Iowa Department of Human Services as payment agent.” A copy of the June 3 order was served on the department.
On October 19, J.W.R. entered an Alford plea to the incest allegation, and the State dismissed the sexual abuse charge. At the hearing following his Alford plea, J.W.R. requested that the court enter a consent decree pursuant to Iowa Code section 232.46 rather than proceed to adjudication. The evidence adduced at the hearing revealed that mental health experts had diagnosed J.W.R. with Asperger’s syndrome, a type of pervasive development disorder. Expert testimony indicated J.W.R. could benefit from residential treatment, an option recommended by the juvenile court officer assigned to the case.
The State resisted the entry of a consent decree. The county attorney told the district court:
I don’t believe that a consent decree plus placement is even a possibility in this case and I would present the Court a case on that. It’s In the Interest of C.D.P., 315 N.W.2d 731, an Iowa Supreme Court case that talks about placement after a consent decree not being allowed. So if the Court decides to place [J.W.R.], I don’t believe consent decree is appropriate based on my reading of that case.
On October 21, the juvenile court entered its findings of fact, conclusions of law, and order. The district court noted that there were no prior referrals related to the child and that the child was a “good candidate for juvenile probation because the child has done well in detention and shelter care.” As a result, the juvenile court declared that entry of a consent decree was “in the best interests of the child.”
With respect to placement, the October 21 order stated that J.W.R.
shall be placed on a Consent Decree under the supervision of the Fifth Judicial District Juvenile Court Services upon the terms and conditions as may be reasonably required, and which shall include a mental health treatment program. The Juvenile Court Officer is directed to supplement the Predisposition Report to consider placement of the child in a foster home if placement in a relative’s home is not an option. Pending such report and further order, the child shall remain in his current placement at Four Oaks, Iowa City Youth Shelter....
The State on November 4 filed a motion to enlarge, arguing again that the district court lacked the authority to place the child outside the home as part of a consent decree. On November 15, the juvenile court generally denied the motion to enlarge, but did further state that placement outside the family home should be considered, including possible placement in a psychiatric medical institution for children.
On November 16, the juvenile court filed a further order. This order stated that “temporary custody of the child is continued with Juvenile Court Services, with the *621 Iowa Department of Human Services as payment agent, for purposes of placement in a shelter care facility.” Unfortunately for J.W.R., the juvenile court was precluded from placing him in his own home because the victim still lived there. Further complicating the matter, although J.W.R.’s aunt and uncle had expressed an interest in caring for him, J.W.R.’s younger brother had already been placed there. The juvenile court officer recommended that the two boys not live together because they had acted together in committing the offenses. The juvenile court officer further recommended against J.W.R. living with his father because his father’s work schedule would have left J.W.R. unsupervised for most of the day.
Finally, the juvenile court filed its consent decree on December 5. This order stated, “The child is placed in the temporary legal custody of Juvenile Court Services, with the Department of Human Services as payment agent, for the purpose of placement in residential treatment.” It appears the juvenile court was contemplating placement, at the recommendation of the juvenile court officer, in a group foster care home that specialized in the treatment of sex offenders, including those suffering from Asperger’s syndrome, pending acceptance of J.W.R. into the program.
The State filed a petition for a writ of certiorari, contending the district court exceeded its authority by entering a consent decree that placed J.W.R. in residential treatment.[8] We granted the writ and transferred the case to the court of appeals.
A majority of the court of appeals panel sustained the writ. The majority concluded the statute was ambiguous and applied a number of principles of statutory construction. First, the majority determined the rule of ejusdem generis precluded a construction of the statute that a term or condition could include residential treatment. Second, the majority concluded that because a deferred judgment in a criminal proceeding does not include jail time, a consent decree could not involve residential treatment. Third, the majority concluded that, under Iowa caselaw, the district court lacked authority to order an out-of-home placement. Finally, the majority noted there was no express funding mechanism for the placement. As a result, the court of appeals sustained the writ and remanded the case to the district court for further proceedings.
II. Overview of Chapter 232.
A. Legislative History of Juvenile Consent Decrees in Iowa.
1. The Iowa Juvenile Justice Act of 1978. Work to revise the chapter of the Code related to juvenile justice began in 1973 when the general assembly requested the Iowa Legislative Council to direct the penal and correctional systems study committee to conduct a study of Iowa’s juvenile justice system. Penal & Corr. Sys. Study Comm., Report to the Legislative Council and the Members of the First Session of the Sixty-Sixth General Assembly, at 1 (1975).
Picking up where the penal and correctional systems study committee left off, the juvenile justice study committee completed its first interim report in 1975. The report noted that “[currently the practice of informal probation (the practice of placing a juvenile under supervision without an adjudication) is widely used throughout the state of Iowa without clear statutory authority.” Juvenile Justice Study Comm., *622 Report to the Legislative Council and the Members of the Second Session of the Sixty-Sixth General Assembly, at 2 (1976). The interim report further provided:
The Study Committee recommends that the practice of informal probation be statutorily provided with the following procedural safeguards; the juvenile’s participation in an informal probation agreement must be voluntary with the advice of his or her parent, guardian, or other responsible adult and legal counsel and if an informal probation agreement is entered into a petition alleging delinquency may not be filed against the juvenile arising out of the same transaction or occurrences which initially brought the juvenile to the attention of the authorities. The Committee further recommends that informal probation agreements not be effective for longer than a six-month period.
Id. The report led to the introduction of a draft bill in the closing days of the legislative session in May 1976. See S.F. 1344, 66th G.A., 2d Sess. (Iowa 1976). The draft bill contained a proposed section on consent decrees. See id. § 23.
The juvenile justice study committee’s second interim report detailed its findings from its examination of the draft bill. Juvenile Justice Study Comm., Report to the Legislative Council and the Members of the First Session of the Sixty-Seventh General Assembly, at 2 (1977) [hereinafter 1977 Report]. In particular, it noted a division of the draft bill detailed the “guidelines for consent decrees (which are comparable to deferred judgments in criminal court).” Id. at 3.
Finally, in 1978 the legislature enacted House File 248. See 1978 Iowa Acts ch. 1088. The bill’s explanation described it as “a complete reorganization of the Code dealing with juveniles.” H.F. 248, 67th G.A., 2d Sess., explanation (Iowa 1978).
2. Liberal construction. The first section of the 1978 Juvenile Justice Act did not change from its predecessor. It provides for liberal construction of the juvenile justice chapter:
This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance and control that will best serve the child’s welfare and the best interest of the state. When a child is removed from the control of his or her parents, the court shall secure for the child care as nearly as possible equivalent to that which should have been given by the parents.
1978 Iowa Acts ch. 1088, § 1. This section remains substantially the same today. See Iowa Code § 232.1 (2011).
3. Original consent decree provision. As enacted in 1978, the Act provided for consent decrees in delinquency proceedings. See 1978 Iowa Acts ch. 1088, § 26 (codified at Iowa Code § 232.46 (1979)). The language of the original Act broadly vested discretion in the juvenile court to enter a consent decree “under terms and conditions established by the' court.” Id. The original Act further provided, “These terms and conditions may include the supervision of the child by a juvenile probation officer or other agency or person designated by the court.” Id. Finally, the Act provided that the original petition against the child could not be reinstated if the child “complied with the express terms and conditions of the consent decree for the required amount of time or until earlier dismissed.” Id.
Thus, at its inception the Juvenile Justice Act did not limit the terms and conditions a district court could impose. Nor did it limit the type of custody arrangements or treatment options a juvenile *623 court could impose as a term or condition. Rather, it stated the terms and conditions permissively “may include” probation. This makes sense because the legislature contemplated consent decrees in juvenile proceedings as an analog to deferred judgments in adult criminal proceedings. In fact, the legislature had recently completed an overhaul of the criminal code, in which it provided that “[wjith the consent of the defendant, the court may defer judgment and place the defendant on probation upon such conditions as it may require” and that “[ujpon fulfillment of the conditions of probation the defendant shall be discharged without entry of judgment.” See 1976 Iowa Acts ch. 1245, ch. 3, § 702 (codified at Iowa Code § 907.3(1) (1979)).
4. 1982 amendment authorizing district court to order work assignments or restitution in consent decrees parallels provision following an adjudication. In 1982, the legislature amended the consent decree provision of the Juvenile Justice Act to provide that the terms and conditions may also permissibly include a “requirement that the child perform a work assignment of value to the state or to the public or make restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim.” 1982 Iowa Acts ch. 1209, § 11 (codified at Iowa Code § 232.46(1) (1983)).
This amendment was not directed to the living arrangements of a juvenile, but instead only provided express authorization for a district court to authorize restitution payments that might not otherwise have been provided for by the Code. See H.F. 2460, 69th G.A., 2d Sess., explanation (Iowa 1982) (noting the amendment was to “add language to include restitution to a victim or to the state or public as a specific disposition under ... a consent decree”). The amendment was plainly designed to ensure the terms and conditions of a consent decree could relate to restitution in addition to other terms, such as those possibly pertaining to living arrangements.
Notably, the legislature had already provided, in a substantively identical provision as a part of the 1978 Act, that an order following an adjudication of delinquency could prescribe a work assignment or the payment of restitution. See 1978 Iowa Acts ch. 1088, § 32 (codified at Iowa Code § 232.52(2)(a) (1979)). Thus, the addition of language related to restitution was not designed to distinguish remedies available under a consent decree from remedies available pursuant to adjudication.[9] Indeed, the opposite seems to be true. The legislative language ensures that the power to impose restitution is available in the contexts of both consent decrees and adjudications of delinquency.
5. 199U amendments authorize district court to restrict driving privileges in consent decrees and following adjudications. In 1994, the legislature amended the consent decree provision for a second time. Like the 1982 amendment, the 1994 amendment had nothing to do with living conditions or residential placement. Instead, it related to driving privileges. The amendment provided that the terms and conditions of a consent decree could also include “prohibiting a child from driving a motor vehicle for a specified period of time or under specific circumstances.” 1994 Iowa Acts ch. 1172, § 19. In the same piece of legislation, the legislature also provided for the suspension of driving privileges following an adjudication of delinquency involving certain delinquent *624 acts.[10] Id. § 21. Thus, the legislature again paralleled the consent decree provision and the provision setting forth permissible orders following an adjudication of delinquency by ensuring judicial authority to impose driving restrictions in both situations.
B. Juvenile Consent Decree Provisions in Other States. A number of states have statutory provisions related to consent decrees or consent decrees in their juvenile justice codes. Some states’ consent decree or consent decree provisions, like Iowa’s, use broad language authorizing the district court to enter consent decrees or decrees under terms and conditions that may be imposed by district courts. For instance, in Alabama, a juvenile court may impose terms and conditions agreed to by the child and his or her parent, legal guardian, or custodian. Ala. Code § 12-15-211(a) (LexisNexis 2012). Similarly, Nevada allows the juvenile court to “[pjlace the child under the supervision of the juvenile court pursuant to a supervision and consent decree” without any express limitation as to the terms and conditions that might be imposed. Nev.Rev. Stat. § 62C.230(b) (2011). In Wyoming, the juvenile court may “place a delinquent child under the supervision of a probation officer,” and such “placement of the child is subject to the terms, conditions and stipulations agreed to by the parties affected.” Wyo. Stat. Ann. § 14-6-228(a) (2012).
Other states, however, markedly depart from the Iowa approach and explicitly use restrictive language to limit the discretion of the district court in fashioning juvenile consent decrees. For instance, in Pennsylvania, a consent decree may be entered before adjudication to “continue the child under supervision in his own home.” 42 Pa. Cons.Stat. Ann. § 6340(a) (Supp.2012). New Mexico has a similar provision. See N.M. Stat. Ann. § 32A-2-22(A) (2010) (“[T]he court may ... continue the child under supervision in the child’s own home under terms and conditions negotiated with probation services and agreed to by all the parties affected.”). The Wisconsin statute takes the middle ground, providing that a consent decree may “place the juvenile under supervision in the juvenile’s own home or present placement.” Wis. Stat. Ann. § 938.32(l)(a) (West 2009) (emphasis added). Plainly, placement of a child in a residential facility pursuant to a consent decree would be outside the scope of the court’s authority under the narrow statutes of Pennsylvania or New Mexico. Iowa’s statute, however, does not have comparable language limiting the discretion of the district court to fashion the terms and conditions of a consent decree that are in the best interests of the child.
C. Caselaw Related to Consent Decrees. There is very little appellate case-law related to juvenile consent decrees. This is hardly surprising. Ordinarily, when a consent decree is issued, the parties have reached an agreement regarding the course of action to be followed with respect to the juvenile. Iowa Code section 232.46(3) expressly provides, however, that a county attorney may object to a consent decree. Such an objection occurred in this case and led to the present appeal.
The parties have cited two Iowa cases related to juvenile consent decrees. In In re Rousselow, 341 N.W.2d 760, 763 (Iowa 1983), a child argued the juvenile court improperly refused to consider the child’s motion for a consent decree even though *625 an adjudicatory hearing had been held because no order adjudicating the child delinquent had been entered. Agreeing with the child, we held that the juvenile court should have considered the child’s motion because section 282.46(1) does not turn on whether an adjudicatory hearing has been held, but rather on the entry of an order of adjudication, and because such an order could be deferred until a dispositional hearing. Id. at 764-65. Further, in Rous-selow we characterized the continuation of a juvenile’s case under a consent decree as a probationary period. Id. at 762. The case did not discuss, however, whether the juvenile court had the authority to require residential treatment, transfer custody, or require the department of social services to pay for residential treatment as a term or condition of a consent decree.
The parties also cited In re C.D.P. There, we considered the validity of a juvenile court order that transferred custody to the department of social services (the predecessor to the department of human services), placed the child in a specific facility, and ordered payment by the department of social services. In re C.D.P., 315 N.W.2d at 782. Notably, although the parties and the juvenile court referred to the order as a consent decree, we held it was not a consent decree because the department “was not a party to any consent proceedings under section 232.46.” Id. at 733. Thus, we found section 232.46 inapplicable and reasoned the transfer of custody to the nonparty department of social services must necessarily have been a disposition made pursuant to section 232.52. Id. As a result, the district court was required to adjudicate the child pursuant to Iowa Code section 232.50 prior to attempting to transfer custody to the department and requiring it to pay placement costs. Id. We further held that where custody of a child is transferred to the department under Iowa Code section 232.52(2)(d )(3), the juvenile court may not order placement in a specific facility. Id. Finally, we held that where disposition of a juvenile case occurs pursuant to an adjudication under Iowa Code section 232.52, there must first be a dispositional hearing under Iowa Code section 232.50. Id.
Because the juvenile court had ordered custody transferred to the department of social services pursuant to a dispositional order not preceded by an adjudication of delinquency, which was impermissible under section 232.50 and 232.52, we remanded the case to allow the court to adjudicate the child delinquent to the extent it wished to enter a dispositional order transferring custody of the child to the department. Id. In any event, In re C.D.P. does not have any bearing on this ease because we are faced with a consent decree entered pursuant to section 232.46 and solely concerned with the juvenile court’s authority to order residential treatment as a condition of a consent decree.
III. Discussion of Merits.
A. Positions of the Parties. On appeal, the State raises only one issue in its brief: “Did the juvenile court act illegally in granting a consent decree, then placing the teenager in residential treatment?” The State argues that under In re Rousse-low and In re C.D.P., residential treatment may be ordered only after an adjudication under Iowa Code section 232.52. According to the State, our caselaw does not allow a district court to enter an order for residential treatment pursuant to a consent decree under Iowa Code section 232.52. J.W.R. responds by contending that the legislature broadly vested the district court with the power to impose “terms and conditions” in a consent decree under Iowa Code section 232.46 and that the statute does not contain any language prohibiting a consent decree that includes *626 residential treatment as a term or condition. As indicated by the following discussion, the resolution of this issue does not depend on resolution of the custody or funding issues.
B. Broad Discretion in District Court to Sculpt Consent Decrees. We begin with noting that as the statute was originally passed, the legislature vested broad discretion with the juvenile court to determine the terms and conditions of a consent decree. While the legislature provided that such term's and conditions may include probation under supervision, there was nothing in the original legislation suggesting the juvenile court lacked the authority to require residential treatment as a term or condition of a consent decree.
It is noteworthy that the Iowa consent decree provision does not contain the limitation of consent decree provisions in states like Pennsylvania or New Mexico, which expressly limit consent decrees to situations involving in-home placement. Instead, Iowa has opted for a broader statutory approach.
Further, the legislature’s use of the broad and flexible phrase “terms and conditions” does not mean that there are no limitations on juvenile court discretion. Iowa Code § 232.46. For example, a term or condition might not be valid if it had no relationship to the crime for which the offender was committed, related to conduct which was not in itself criminal, or required or forbade conduct not reasonably related to future criminality. See Samuel M. Davis, Rights of Juveniles, § 7:3 (2013) (citing In re Frank V., 233 Cal.App.3d 1232, 285 Cal.Rptr. 16, 21 (1991)). Otherwise, however, the juvenile court has broad discretion in shaping a consent decree to meet the specific facts of each case.
C. Liberal Construction of Broad District Court Discretion to Enter Consent Decrees. Any interpretation of the scope of discretion of a district court in establishing the terms and conditions of a consent decree under section 232.46 must also take into account the general instructions of the legislature in section 232.1. The legislature has directed that “[tjhis chapter shall be liberally construed to the end that each child ... shall receive ... the care, guidance and control that will best serve the child’s welfare and the best interest of the state.” Iowa Code § 232.1. Juvenile proceedings “are not criminal proceedings but are special proceedings that serve as an alternative ... with the best interest of the child as the objective.” In re J.A.L., 694 N.W.2d 748, 751 (Iowa 2005). A narrow reading of the authority of the juvenile coux-t to fashion consent decrees under section 232.46 is inconsistent with these principles.
D.Legislative History Comparing Consent Decrees to Deferred Judgment Supports Residential Treatment. As noted above, the 1977 committee report compared consent decrees to deferred judgments in the criminal context. See 1977 Report, at 3. In the context of deferred judgments, we have held that the legislature has given the district couxt broad authority to establish conditions of probation. State v. Rogers, 251 N.W.2d 239, 241-43 (Iowa 1977). We have further stated that in granting probation, the tei’ms and conditions must relate to rehabilitation of the convicted criminal, protection of the community, or both. Id. at 243. We have specifically held that a requirement that the defendant attend a residential treatment center is a legally permissible condition of a deferred judgment in the adult ciiminal context. State v. Sinclair, 582 N.W.2d 762, 765-66 (Iowa 1998). Because the legislatui-e intended the consent decree in juvenile proceedings to be analogous to the deferred judgment in criminal proceedings, it logically follows that the *627 legislature also intended residential treatment to be a legally permissible condition of consent decrees.
The court of appeals cited State v. Tensley, 334 N.W.2d 764 (Iowa 1983), for the proposition that the district court lacks authority to order residential treatment as a condition of a consent decree because it would be akin to ordering the juvenile to serve jail time and therefore was mutually exclusive to releasing the child on probation. In Tensley, we held that a criminal defendant could not be sentenced to serve time in a county jail as a condition of probation because, while the deferred judgment statute permitted “commitment to an alternate jail facility or a community correctional residential treatment facility,” neither was meant to be the equivalent of jail. Id. at 765 (internal quotation marks and citations omitted); see also Trecker v. State, 320 N.W.2d 594, 596 (Iowa 1982). But whether pursuant to a consent decree or probation subsequent to a deferred judgment, residential treatment is not punishment. Instead, residential treatment is for the benefit of the juvenile or the defendant, depending on the case.
E. The Doctrine of Ejusdem Generis Has No Application in Determining Scope of Consent Decrees Under Section 232.46. The doctrine of ejusdem generis “provides that when general words follow specific words in a statute, the general words are read to embrace only objects similar to those objects of the specific words.” Teamsters Local Union No. 421 v. City of Dubuque, 706 N.W.2d 709, 715 (Iowa 2005). Key to the application of the doctrine is the identification of a class. See id.; see also Federated Mut. Implement & Hardware Ins. Co. v. Dunkelberger, 172 N.W.2d 137, 141 (Iowa 1969) (noting the doctrine “applies only where the specific words relate to a single class, character or nature”), overruled on other grounds by Lewis v. State, 256 N.W.2d 181 (Iowa 1977).
■ Examination of the legislative history of Iowa Code section 232.46 demonstrates that the doctrine of ejusdem generis has no application. Certainly the probationary language in the original statute would not be construed ' to limit the power of the district court to enter consent decrees. As originally enacted, section 232.46 provided that a consent decree may include probation under supervision as a term or condition, but this language, standing alone, cannot be construed to prohibit residential treatment. In other words, when the statute was originally enacted, there was no class that might restrict the scope of the general phrase “terms and conditions.”
The 1982 and 1994 amendments to the consent decree statute were similarly not designed to limit the permissible terms and conditions of a consent decree, but rather served primarily to expand the district court’s authority to impose terms and conditions related to two different areas— restitution and driving privileges. They were also added to parallel the consent decree and informal adjustment provisions of the juvenile justice chapter with the provision providing possible dispositions following an adjudication of delinquency.
The addition of two diverse sanctions, which the district court may include as part of a consent decree, do not form an identifiable class of conduct triggering ejusdem generis. After the amendments, the statute vests the juvenile court with discretion to sculpt a consent decree with terms and conditions that may include terms and conditions related to supervision, terms and conditions related to work and restitution, and terms and conditions related to driving privileges, among others. Simply, the statute has never contained a class with similar characteristics that would trigger the doctrine’s application. *628 See 2A Norman J. Singer & J.D. Shambie Singer, Sutherland, Statutory Construction § 47.18, at 382 (7th ed. 2007) (noting that without similar characteristics, “classification is arbitrary and meaningless” for ejus-dem generis purposes). Where a general term is followed by specific terms not suggesting a class, the rule does not apply. Id. § 47.20, at 387.
Further, the additional amendments were added to both the consent decree and the adjudication provisions of chapter 232. It seems doubtful the legislature added the language to section 232.52 to expand the range of options for the juvenile court, but added identical language to section 232.46 to restrict the juvenile court’s power to shape consent decrees. Clearly, the legislature wanted to add to the options of the juvenile court in both the consent decree and adjudication settings. It did not want to limit the power of the juvenile court in the consent decree context as compared to an adjudicative context.
Moreover, the juvenile court’s authority to order treatment under section 232.46 stems from two clauses. First, the unbound “terms and conditions established by the court” provides an avenue through which the juvenile court could order residential treatment. Iowa Code § 232.46(1). Second, because one of the suggested terms and conditions is akin to probation and because residential treatment is a permissible condition of probation, it follows that such treatment would also be permissible under the probation clause.
F. Inapplicability of Due Process Concerns. The majority seeks to inject into this case the issue of whether J.W.R.’s parents were deprived of due process by the consent decree in this case. J.W.R.’s parents, of course, do not complain, but nonetheless, the majority proceeds to explore the issue.
In this case, an order transferring temporary custody of the child with juvenile court services was entered on June 3, 2011. A copy of the order was sent to J.W.R.’s parents. The parents received notice, but filed no objection to the temporary transfer of custody to juvenile court services. Further, the parents appeared at the October 19 adjudicatory hearing, during which the consent decree was discussed, and again raised no objection.
The December 5 order did not alter custody arrangements. Custody of J.W.R. had already been temporarily transferred to juvenile court services. Instead, the consent decree only affected J.W.R.’s placement. See Pfoltzer v. Cnty. of Fairfax, 775 F.Supp. 874, 883 n. 17 (E.D.Va.1991). The fact that the consent decree involved placement and not custody was recognized by the State when it characterized the issue as one involving placement of the child in a residential treatment facility. The State correctly did not characterize the issue as one involving a transfer of custody as the majority mistakenly does.
The due process concerns associated with placement are significantly less than those associated with a transfer of custody. See id. at 882-83 & n. 17. In Fitzgerald v. Williamson, 787 F.2d 403, 408 (8th Cir.1986), a case in which a state agency had acquired legal custody of a child, the Eighth Circuit noted that postdeprivation procedural safeguards are constitutionally adequate. In Iowa, a habeas remedy is available for such deprivations. See Lamar v. Zimmerman, 169 N.W.2d 819, 821 (Iowa 1969) (“Although habeas corpus was originally designed to test the legality under which a person was restrained of his liberty, it was long ago enlarged to include an inquiry into the proper custody of minor children.”). A parent may also file a habeas petition to challenge placement. See Doan Thi Hoang Anh v. Nelson, 245 *629 N.W.2d 511, 513-14, 516 (Iowa 1976) (permitting a Vietnam War refugee to file a petition for a writ of habeas corpus to regain custody of her child who had been placed with an Iowa family for purposes of adoption, but had not yet been legally adopted).
In any event, Iowa Code section 232.38(1) prohibits judicial proceedings subsequent to the filing of a petition without the presence of the child’s parents, unless they have failed to appear after reasonable notification. Further, Iowa Code section 232.46(3) expressly provides that the juvenile court may not enter a consent decree “unless the child and the child’s parent, guardian or custodian is informed of the consequences of the decree by the court.” Iowa Code § 232.46(3). Granted, the provision allows a county attorney to object to the entry of a consent decree and does not expressly allow a parent to object to its terms. Id. Even if the parents were not entitled to a predeprivation right to be heard, contrary to Fitzgerald, such a right would be implied. See Traverso v. People ex rel. Dep’t of Transp., 6 Cal.4th 1152, 26 Cal.Rptr.2d 217, 864 P.2d 488, 494-95 (1993) (“[T]he United States Supreme Court ... [has] inferred a right to a hearing when constitutional problems would otherwise arise.”); see also State v. One 1978 Chevrolet Corvette VIN No. 1Z87L8S437138, 8 Kan.App.2d 747, 667 P.2d 893, 897 (1983) (suggesting that courts can graft requirements for notice and a hearing onto a statute that does not otherwise explicitly set forth those requirements in order to give the statute a constitutional interpretation). If at all possible, we construe statutes to avoid constitutional issues. Simmons v. State Pub. Defender, 791 N.W.2d 69, 73-74 (Iowa 2010).
G. Timing Issues. The majority opinion suggests that residential treatment is inappropriate because of the timing restrictions of section 232.46, which permits a consent decree to remain in effect for up to two years. Iowa Code § 232.46(4). The timing restrictions, however, do not prevent the juvenile court, in its discretion, from utilizing residential treatment as a term and condition of a consent decree where the timing restriction does not present an obstacle. The timing limitations, of course, must be respected by a juvenile court. Further, a consent decree may remain in effect beyond a child’s eighteenth birthday. In re J.J.A., 580 N.W.2d 731, 738 (Iowa 1998).
H. Impact of Funding Issues. Initially, it must be noted that no party raised in the trial court the issue of whether the district court had the authority to order DHS to pay for the residential treatment imposed as a term or condition of the consent decree in this case. Further, on appeal, the State makes no claim that the juvenile court lacked the authority to order DHS to pay. Moreover, DHS has not involved itself in the case.
Therefore, this case is fundamentally different from In re C.D.P., where the department of social services brought the challenge. The State does not contend that it is representing DHS or seeking to advance DHS’s financial interests. As a result, any issue regarding the appropriateness of the funding of the placement with the department in this case is not before the court.
In any event, even the precise question related to funding in this case is not the terms and conditions under which DHS may be required to pay for placement under an adjudication. The real question is to what extent DHS may be required to pay for placement pursuant to temporary orders entered by the juvenile court prior to an adjudication which remain in place following a consent decree. If that issue *630 was properly before us, there would be a number of interesting questions to explore.
For example, Iowa Code section 232.21 authorizes the juvenile court to order shelter care in various licensed care facilities and “[a]ny other suitable place designated by the court” as long as it is not a detention facility. Id. § 232.21(2)(a)(4); see also id. § 232.21(l)(e). When a child is placed in shelter care pursuant to section 232.21, the state must pay the costs. Id. § 234.35(l)(h). In the case of an alleged delinquent child, shelter care may continue for any period until the final disposition of the case. Id. § 232.2(50).
In this case, J.W.R. was placed in shelter care at Polk County Youth Services and then at Four Oaks shelter in Iowa City. The placement in the residential facility in this case at least arguably includes a shelter care component, which may be paid for by the state, id. § 234.35(1)(⅛), and a treatment component, which may also be paid for by the state, id. § 232.141(4)(c).
Further, even if there is no authority for the state to pay for the residential treatment in this case, the argument may be made that section 232.46 does not prohibit a parent or some third party from paying for the treatment even if the state is precluded from doing so. In fact, section 232.141(1) directs the juvenile court to inquire into the ability of the child’s parent to pay the cost of court-ordered treatment and order such payment if the parents are able. See id, § 232.141(1).
Finally, even if there is no express statutory authority for the state to pay the costs of residential treatment ordered pursuant to a consent decree, that does not mean the district court may never order residential treatment pursuant to a consent decree. The current funding provisions were amended in 1989 as part of an effort to shift the burden of providing juvenile justice services from the county to the state. See 1989 Iowa Acts ch. 283, § 23 (codified at Iowa Code § 232.141 (Supp.1989)). There is nothing in the legislative history to suggest a purpose of the change in the funding stream was to alter the discretion of the district court to enter consent decrees based upon terms and conditions the district court believed appropriate.
None of these issues, however, have been raised in this case. The above discussion is simply designed to illustrate the wisdom of our traditional rules of issue preservation.
IY. Conclusion.
Iowa Code section 232.46 vests broad discretion in the district court to enter consent decrees under terms and conditions approved by the juvenile court. The legislative history reveals that consent decrees were akin to deferred judgments in the criminal context. Because a district court may order a criminal defendant to residential treatment as part of a probation order entered pursuant to a deferred judgment, it is safe to assume that the legislature also intended the juvenile court to have similar power in the context of a consent decree under Iowa Code section 232.46. This analogy is strengthened by section 232.1, which emphasizes that the terms of the Act are to be liberally construed.
Further, the language of the statute, coupled with the legislative history, demonstrates that the doctrine of ejusdem gen-eris does not serve to curtail the discretion of the juvenile court to enter consent decrees or specify their terms and conditions. It would also be ironic to turn subsequent amendments designed to expand judicial remedies upside down and interpret them as a tool to restrict judicial authority. *631 Moreover, timing concerns are of little import because the juvenile court would be unlikely to issue a consent decree if it was likely to lose jurisdiction over the child in short order.
Finally, we should not consider the potential due process concerns of parents arising from a transfer of custody under section 282.46 because the State lacks the standing to raise these concerns. In any event, the custody concerns are without merit. We should similarly not consider issues of funding that are not properly before the court. Payment for residential treatment pursuant to a consent decree is a complicated issue that we should not be so quick to decide without input from the parties. In any event, DHS has not challenged its ability to pay, and the State has not preserved the issue on DHS’s behalf.
For the above reasons, the juvenile court has the broad discretion to sculpt a consent decree under section 282.46 that includes residential treatment. As a result, the writ of certiorari should be annulled.
WIGGINS and HECHT, JJ., join this dissent.

. The State did not challenge the authority of the district court to order the department of human services to pay for the residential treatment.

. In the same piece of legislation, the legislature also provided for victim restitution under informal adjustments. See 1982 Iowa Acts ch. 1209, § 8 (codified at Iowa Code § 232.29 (1983)).

. Again, the legislature provided for the same restrictions under an informal adjustment. See 1994 Iowa Acts ch. 1172, § 14.